IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$33,120.00 IN UNITED STATES CURRENCY,<br><br>Defendant. | Civil No. 8:18CV 66<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *In Rem*

2. The Defendant property consists of $33,120.00 in United States currency seized from Douglas Eckhardt on September 20, 2017, during a traffic stop on westbound Interstate 80 near mile marker 430 in Sarpy County, Nebraska. The Defendant property is presently in the custody of the U.S. Marshals Service at Omaha, Nebraska.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

6. The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

7. Omaha Police Department Canine Officer Jeff Vaughn conducted a traffic stop on Douglas Eckhardt on September 20, 2017, on westbound Interstate 80 in Sarpy County, Nebraska. The stop was for Eckhardt following the vehicle in front of him too closely. The following distance was less than half a second. As Vaughn was catching up to Eckhardt's vehicle, he saw the rear windows of the vehicle were down several inches. Vaughn had to utilize

his siren a couple of times to get Eckhardt to pull over. More than thirty seconds went by from the time Vaughn first activated his siren to when Eckhardt finally pulled over. During that time, there were several places where Eckhardt could have pulled over. Vaughn believed thirty seconds for the driver to pull over and stop was not consistent with the normal motoring public.

8. Eckhardt told Vaughn he had rented the vehicle the day before, September 19th, in Muscatine, Iowa. Eckhardt was going to Denver to visit family and friends. He did not know how long he was going to stay, but probably a couple days. He would also visit Estes Park because he buys and sells jewelry. He is going to stay with his nephew but did not know the address. He knew how to get to his nephew's home because he has been there quite a few times. Eckhardt did not drive his personal vehicle because it was damaged. This is the third trip to Colorado he made this year. His nephew is actually his great-nephew and the friends he would be visiting were actually his great-nephew's friends.

9. Vaughn saw a blanket and a pillow in the back seat of Eckhardt's vehicle, as well as snack food lying on the passenger floorboard and coffee containers in the vehicle's center console. Vaughn suspected Eckhardt was a smuggler and, for that reason, asked Eckhardt if he would be willing to answer some more questions following the conclusion of the traffic stop. Eckhardt agreed. Officer Vaughn asked Eckhardt if there was any marijuana, methamphetamine, cocaine, heroin, weapons or large amounts of U.S. currency in the vehicle. Eckhardt said no to each item. Eckhardt then gave Vaughn permission to search the vehicle.

10. Officers found a purple Crown Royal bag in the center console; it had less than an ounce of marijuana in it. Vaughn went back to Eckhardt and asked if there were any additional items in the vehicle. Eckhardt said no. He said there was nothing in the trunk and he had a bag

on the back seat. Vaughn had not seen a bag in the back seat, but did see handprints on the trunk. In continuing his search, Vaughn found a duffle bag and a garment bag in the trunk. The duffle bag had a white plastic grocery sack in it, which held $32,020.00 in rubber-banded bundles. Eckhardt said it was his money. It was $20,000.00; he was going to use it to purchase jewelry. Vaughn found four bags of marijuana in the garment bag; the total weight of them was just over three pounds. Officers found $1,100.00 in Eckhardt's wallet. The total amount of money seized was $33,120.00—the sum of the money in the duffle bag and the money in Eckhardt's wallet.

11. Following Eckhardt's arrest, Omaha Police Department Narcotics Sergeant Dave Bianchi advised Eckhardt of his *Miranda* rights and obtained a statement. Eckhardt said he was coming from his home in Rock Island, Illinois, and was on his way to Denver. He left at 3:30 a.m. that morning (September 20, 2017) and was planning to drive straight through to Denver. He was going to Colorado to purchase jewelry, knives and walking sticks. He collects these items. He planned to stay at the Super 8 Motel in Commerce City.

12. Bianchi asked Eckhardt about the duffle bag containing the three pounds of marijuana Officer Vaughn found in his trunk. Eckhardt said a friend of his put it in the trunk the previous night. The same "friend" directed him to take the bag on this trip and said a party would meet him at the Super 8 Motel in Commerce City. There, the party would take the bag from Eckhardt. Eckhardt said he did not look in the bag, but he picked it up and moved it; he thought it felt empty. Eckhardt said he often makes such trips. This is the fourth time the "friend" has asked him to carry a bag. Every time he has done this, the "friend" puts the bag in the trunk prior to Eckhardt leaving Illinois. On all the trips, he rented a car from a rental agency in Iowa the night

before he leaves. After he rents the vehicle, the friend comes over and puts the bag in the trunk. On previous trips, he did not look in the bag but had lifted it and moved it. Each time the bags felt similar to the duffle bag found in his trunk today. Eckhardt said when he arrives at the Super 8 Motel in Commerce City, he usually waits in the parking lot. After a short time, a party (whom he does not know) arrives and meets him. The party will approach him and ask his name. Once Eckhardt identifies himself, the party says he is there to pick something up. Then, Eckhardt opens the trunk, the party removes the bag from the trunk, and gives Eckhardt one ounce of marijuana. Prior to leaving Illinois, Eckhardt's "friend" puts the bag in the trunk and gives him $100.00 for gas money. On the three previous trips, a Hispanic male has met him in the parking lot of the Super 8 in Commerce City; that man took the bag from the trunk. One time, a Hispanic male and a black male arrived together and took the bag from the trunk. He has never looked in the large duffle bag to see what was in it. He lifted it up and thought it felt very light. He believed today and on the prior trips, the bag might be empty.

13. Bianchi asked Eckhardt more about his "friend." He does not know the name. He met him at bars in the Quad Cities area where Eckhardt used to drink and play darts. When Eckhardt is planning on making a trip to Colorado, he hangs out at a bar in Iowa he knows his "friend" and associates frequent. When he sees them, he approaches them and lets them know he is making a trip to Colorado. His "friend" and he then make arrangements to bring the duffle bag to Eckhardt's residence.

14. Eckhardt said the large amount of money found in his suitcase was his. He was going to use the money to purchase jewelry, knives and walking sticks in Colorado. Bianchi asked if the people in Iowa who gave him the duffle bag also gave him the money; Eckhardt said they did

not. Eckhardt again said the money was his and he was going to use it to purchase collectible jewelry, knives and walking sticks at various shops in Colorado. Eckhardt said it would be $20,000.00. He repeated this twice.

15. Bianchi found out the amount of money in the vehicle was well over $20,000.00. He confronted Eckhardt with that fact. Bianchi pointed out that, if what Eckhardt was saying about the money was true, then he would know exactly how much is in each bundle. At that point, Eckhart changed his story; he said the money had been given to him by the people in Iowa. They directed him to take it to the people in Colorado. Eckhardt said when the Iowa "friend" came to his house, he put the duffle bag in the trunk and put the grocery bag that had the bundles of money in it next to it. Eckhardt said he took the grocery sack and put it in his suitcase so it would not be seen by anyone if the trunk was opened. Eckhardt said the Iowa suspects did not tell him how much money it was. Eckhardt said this was the first time the Iowa people gave him money that was not heat-sealed. The other three times he made this trip for the Iowa people, they also gave him large bundles of money, but the bundles were packed into a heat-sealed bag and sealed tight.

16. Eckhardt said on the previous trips, and what he intended to do on this trip, was arrive in Colorado and meet the individual(s) at the hotel. He would pull the bundles of money out of his suitcase and place them next to the duffle bag in the trunk. Then, when the Colorado people opened the trunk, they would take the duffle bag and the bundles of cash. Eckhardt said that is what had happened on the three previous occasions, and that was his plan for this trip.

## Claim for Relief

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

ROBERT C. STUART
Acting United States Attorney

By: _____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
Email: nancy.svoboda@usdoj.gov

## VERIFICATION

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

    Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA
Assistant U.S. Attorney

Subscribed and sworn to before me this 15th day of February, 2018.



Notary Public

    Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney

8